UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GEORGE SKAVRON

                                 CIVIL ACTION

VERSUS

                                 NUMBER 07-70-RET-SCR

LOWE'S HOME CENTER, INC.,
ET AL.

## NOTICE

     Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

     In accordance with 28 U.S.C. §636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from a attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

     ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, March 6, 2009.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GEORGE SKAVRON

CIVIL ACTION

VERSUS

NUMBER 07-70-RET-SCR

LOWE'S HOME CENTER, INC., ET
AL

### **MAGISTRATE JUDGE'S REPORT**

Before the court is a Motion for Summary Judgment filed by defendants East Baton Rouge Parish Sheriff Sid Gautreaux and Sgt. Harold E. Sutton.   Record document number 27.   The motion is opposed.[1]

### **Background**

On February 10, 2005, plaintiff George Skavron and his grandson went shopping at a Lowe's Home Center in Baton Rouge. Plaintiff brought his pet dog into the store.   While the plaintiff was speaking with a store employee, defendant Sutton, an off-duty East Baton Rouge Deputy Sheriff working a security detail at the store, approached them and asked the plaintiff to leave the store because his dog was not allowed in the store.   Plaintiff asked to speak with a store manager.   Before a store manager arrived, Sutton took the plaintiff into custody for failing to leave the premises.

Plaintiff alleged that Sutton forcibly grabbed his right arm

---

[1] Record document numbers 32 and 37.

and handcuffed the plaintiff to place him under arrest.[2]  Plaintiff alleged that he informed Sutton that he was in pain, and in response Sutton tightened the handcuffs causing the plaintiff's wrists to bleed.[3]  Plaintiff also alleged that Sutton pulled very hard on his left arm, causing injury to his neck and shoulder.[4]

Sutton escorted the plaintiff to an office in the back of the store, leaving his grandson and dog unsupervised.  Plaintiff alleged that he was detained for more than 45 minutes.  Sutton issued the plaintiff a court summons.  Plaintiff was released, told to leave the store, and did so after locating his grandson.

Plaintiff filed this action pursuant to 42 U.S.C. § 1983. Plaintiff alleged that Sutton falsely arrested him in violation of the Fourth and Fourteenth Amendments, and that Sutton used excessive force in effectuating the false arrest.  Plaintiff also alleged that defendant Sutton violated his right to free association under the First Amendment.  Plaintiff sued Sgt. Sutton in both his individual and official capacity.

In addition to Sutton, the plaintiff named as a defendant Greg Phares, then the East Baton Rouge Parish Sheriff.  Plaintiff alleged that Phares failed to train and supervise Sutton.  The current sheriff, Sid Gautreaux, was substituted for Phares pursuant

---

[2] Record document number 1, Exhibit A, Petition, ¶¶ 4 an 5.

[3] *Id.*, ¶ 6.

[4] *Id.*

2

to Rule 25(d), Fed.R.Civ.P.[5]

Plaintiff also asserted state law claims against Sutton based on negligence, assault and battery, false arrest and intentional infliction of emotional distress, and alleged that the sheriff is vicariously liable on these claims.[6] Plaintiff sought recovery of actual damages, punitive damages under 42 U.S.C. §§ 1981a and 1983, and attorney's fees.

## Motion for Summary Judgment

Defendants Sutton and Gautreaux filed this motion arguing that defendant Sutton was entitled to qualified immunity from the plaintiff's § 1983 false arrest and excessive force claims. Defendants argued that Sutton had probable cause to arrest the plaintiff for violating LSA-R.S. 14:63.3, Louisiana's law prohibiting entry or remaining on a premises after being forbidden. Defendants also argued that force was only used because the plaintiff attempted to resist arrest, and that the amount of force used was reasonable.

With respect to the claims against the sheriff, the defendants

---

[5] Plaintiff did not specify whether Phares was sued in his individual or official capacity, or both. Because Phares was sued as the successor to former sheriff Elmer Litchfield, and the current sheriff, Sid Gautreaux, was substituted for Phares pursuant to Rule 25(d), the court construes the claims against Phares/Gautreaux as being brought against the sheriff in his official capacity.

[6] Plaintiff also sued Lowe's Home Center, Inc., but settled his claims against it. Record document number 26.

argued that no evidence exists which shows any failure to properly train or supervise Sutton.   Defendants also argued that the plaintiff could not establish any deliberate indifference by the sheriff.

In support of their motion, the defendants relied on a statement of uncontested material facts,[7] Sutton's affidavit,[8] documentation of various police certifications issued to Sutton,[9] a copies of various Administrative Policies and Procedures of the East Baton Rouge Sheriff's Office,[10] portions of the deposition testimony of the plaintiff,[11] Frank Rizzutto,[12] Randall Feather,[13] Shelia F. Dunn,[14] Charlene M. Richard,[15] and Sutton,[16] an affidavit

---

[7] Record document number 27-3.

[8] Record document number 27-3, exhibit A.

[9] Record document number 27-5, exhibit A-1.

[10] Record document number 27-6, exhibit A-2.

[11] Record document number 27-7, exhibit B.

[12] Record document number 27-8, exhibit C.  Rizzutto was the Lowe's employee who was assisting the plaintiff at the time of the incident.

[13] Record document number 27-9, exhibit D.  Feather was the Lowe's loss prevention manager working at the time of the incident.

[14] Record document number 27-10, exhibit E.  Dunn was a Lowe's store-wide manager.

[15] Record document number 27-11, exhibit F.  Richard was a customer at Lowe's who witnessed part of the incident.

[16] Record document number 27-12, exhibit G.

4

from Randall Feather with attached video surveillance footage of the incident,[17] and portions of the deposition testimony of Gary Allen Stevens.[18]

Plaintiff opposed the motion and argued that Sutton was not entitled to qualified immunity because he did not have the authority under Lowe's store policies to detain and/or arrest the plaintiff, and there was no probable cause to arrest the plaintiff under LSA-R.S. 14:63.3. Plaintiff asserted that the force used on him was unreasonable in light of the alleged violation and the injuries he endured. Plaintiff also argued that his claims against the Sheriff are supported by Sutton's failure to properly handcuff the plaintiff without injury and the history of internal complaints against Sutton. Plaintiff argued that he has a First Amendment freedom of speech claim for a retaliatory prosecution based on his protesting the arrest. Plaintiff asserted that such a claim has not been refuted by the defendants. Plaintiff argued that an award for punitive damages is warranted based on Sutton's ill will and reckless indifference. Finally, the plaintiff argued that the facts in this case demonstrate the kind of extreme and outrageous conduct necessary to succeed on his emotional distress state law claim.

---

[17]   Record document number 27-13, exhibit H.

[18]   Record document number 27-13, exhibit I.  Stevens was an employee at Lowe's.

Plaintiff supported his opposition with his affidavit[19] and portions of his deposition testimony,[20] portions of the deposition testimony of Randall Feather,[21] the Response to Plaintiff's Request to Production No. 1,[22] the Lowe's Contract Parking Lot Security Outline,[23] the affidavit of John Anderson Childress,[24] the misdemeanor summons dated February 10, 2006,[25] portions of Sutton's deposition testimony,[26] portions of the deposition testimony of Frank Rizzutto[27] and Samuel Rotolo,[28] Officer Report No. 06-00009107 dated February 10, 2006,[29] portions of Gary Allen Steven's

---

[19] Record document number 32-2, exhibit A.

[20] Record document number 32-2 exhibit B.

[21] Record document number 32-3, exhibit C.

[22] Record document number 32-3, exhibit D.

[23] *Id.*, exhibit E, (under seal).

[24] Record document number 32-4, exhibit F.  Childress was a Lowe's district loss prevention manager at the time of the incident.

[25] Record document number 32-4, exhibit G.

[26] Record document number 32-5, exhibit H.

[27] Record document number 32-5, exhibit I.

[28] Record document number 32-6, exhibit J.  Rotolo was a Lowe's sales manager working at the time of the incident.

[29] Record document number 32-6 exhibit K.

deposition testimony,[30] an incident report dated February 10, 2006,[31] the hand-written statements of Frank Rizzutto[32] and Gary Allen Stevens,[33] and portions of the deposition testimony of Dr. Thad Broussard,[34] Daniel McAllister,[35] Charlene Richard[36] and Keith Richard.[37]

Although the defendants sought dismissal of all the plaintiff's claims against them, they did not specifically address the plaintiff's state law claims under Louisiana Civil Code article 2315 based on assault and battery, negligence, or vicarious liability. Consequently, this report does not specifically address those claims.

### Applicable Law

Summary judgment is only proper when the moving party, in a

---

[30] Record document number 32-6, exhibit L.

[31] Record document number 32-7, exhibit M.

[32] Record document number 32-7, exhibit N.

[33] Record document number 32-7, exhibit O.

[34] Record document number 32-7, exhibit P. Dr. Broussard examined the plaintiff's injuries after the incident.

[35] Record document number 32-8, exhibit Q. McAllister is a division commander over Internal Affairs for the East Baton Rouge Sheriff's office during defendant Sutton's employment.

[36] Record document number 32-8, exhibit R.

[37] Record document number 32-8, exhibit S. Keith Richards was a customer at Lowe's who witnessed part of the incident.

properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.  Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).  If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor.  *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.  This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor.  *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.  The court may not make credibility findings, weigh the evidence or resolve factual disputes.  *Id.; International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059, 112 S. Ct. 936 (1992).

The substantive law dictates which facts are material. *Littlefield v. Forney Independent School Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).

**Claims under § 1983**

To state a claim under § 1983 a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).[38] A plaintiff must also identify defendants who were personally involved or whose acts are causally connected to the alleged Constitutional violation. *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir. 2005), *citing*, *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

**Qualified Immunity**

A state official sued in his individual capacity has qualified immunity from suit and liability unless the plaintiff shows the official violated clearly established Constitutional rights.  The principles of qualified immunity are summarized as follows:

> The doctrine of qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The qualified immunity analysis is a two-step inquiry.  First, a court must decide whether the plaintiffs' allegations, if true, establish a violation of a clearly established right. *Hare v. City of Corinth*,

---

[38] In a § 1983 action brought against a state official, the statutory requirement of action under color of state law and the state action requirement of the Fourteenth Amendment are identical. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929, 102 S.Ct. 2744, 2749-50 (1982).

135 F.3d 320, 325 (5th Cir.1998)(en banc).  Second, if the plaintiffs have alleged a violation, the court must decide whether the conduct was objectively reasonable in light of clearly established law at the time of the incident.  *Id*.  Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Id*.

*Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).

**False Arrest**

It is well established that a claim of false arrest is cognizable under § 1983.  *Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992).  "These causes of action implicate the constitutional 'guarantees of the fourth and fourteenth amendments when the individual complains of an arrest, detention, and prosecution without probable cause.'"  *Sanders*, *supra*, citing *Thomas v. Kippermann*, 846 F.2d 1090 (5th Cir. 1988).  Thus to recover on a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause.  *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007).  Plaintiff must tender evidence establishing misconduct that exceeds mere negligence. *Sanders*, supra.

"'Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008), *citing*, *United States*

10

*v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006).   However, if officers of reasonable competence could differ as to whether probable cause exists, the defendant is entitled to immunity. *Waltman v. Payne*, 535 F.3d 342, 347 (5th Cir. 2008), *citing*, *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).   Reasonable mistakes made as to probable cause warrant the protection of qualified immunity.   *Id.*, citing, *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir.2005).

**Excessive Force**

To prevail on a § 1983 claim for damages resulting from an officer's use of excessive force, a plaintiff must allege: (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the use of the force was clearly unreasonable.   *Bush v. Strain,* 513 F.3d 492, 500-01 (5th Cir. 2008), *citing, Flores v. City of Palacios*, 381 F.3d, 396 (5th Cir. 2004).   The objective reasonableness of the force used by a law enforcement officer is determined by balancing the amount of force used against the need for that force.   *Bush,* at 501, *citing*, *Ikerd v. Blair,* 101 F.3d 430, 434 (5th Cir. 1996).   Factors that should be considered include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."   *Bush, supra*, *citing*, *Graham*

11

*v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989).

To determine whether an officer is entitled to qualified immunity in an excessive force claim, the court must consider whether "the officer's use of force, though a violation of the Fourth Amendment, was nevertheless objectively reasonable in light of clearly established law at the time the challenged conduct occurred." *Bush*, *supra*, *citing*, *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). The Fifth Circuit elaborated on this inquiry as follows:

> Courts must judge the reasonableness of an officer's conduct by taking into account the tense, uncertain, and rapidly evolving circumstances in which officers must often make split-second judgments ... about the amount of force that is necessary in a particular situation. From this on-scene perspective rather than the 20/20 vision of hindsight, courts should examine the objective reasonableness of an officer's belief that a certain degree of force was lawful under the circumstances.

*Bush, supra*, (citations omitted).

**Failure to Supervise and/or Train**

"Under § 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson,* 245 F.3d at 459, *citing*, *Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir. 1987). To establish § 1983 liability against supervisors, the plaintiff must show that: (1) the supervisor failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or

12

train amounted to deliberate indifference to the plaintiff's constitutional rights. *Roberts,* 397 F.3d at 292, *citing*, *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197 (1989) and *Burge v. St. Tammany Parish,* 336 F.3d 363, 370 (5th Cir. 2003).

The Fifth Circuit elaborated on this supervisory liability test as follows:

> Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference. The plaintiff must generally demonstrate at least a pattern of similar violations. Furthermore, the inadequacy of training must be obvious and obviously likely to result in a constitutional violation. *Thompson,* 245 F.3d at 459 (citations omitted).

**First Amendment**

Although the plaintiff alleged in his petition a violation of his freedom to associate under the First Amendment, the plaintiff's memorandum indicates that his First Amendment claim involves a violation of his right to freedom of speech. Specifically, the plaintiff asserted that Sutton retaliated against him for protesting the unlawful arrest.

A significant amount of verbal criticism and challenge directed at police officers is protected by the First Amendment. *Mesa*, 543 F.3d at 273, *citing*, *Enlow v. Tishomingo County*, 962 F.2d 501, 509 (5th Cir. 1992) "'The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free

13

nation from a police state.'" *Id*.

### Punitive Damages

Plaintiff sought punitive and exemplary damages under § 1983. The general rule in the Fifth Circuit regarding punitive damages in § 1983 cases is that a punitive damages award may stand in the absence of actual damages where there has been a constitutional violation. *Louisiana ACORN Fair Housing v. LeBlanc,* 211 F.3d 298, 302-03 (5th Cir. 2000); *see also Williams v. Kaufman County,* 352 F.3d 994, 1015 (5th Cir. 2003).  Punitive damages may be awarded only when the defendant's conduct is 'motivated by evil intent' or demonstrates 'reckless or callous indifference' to a person's constitutional rights."  *Williams,* 352 F.3d at 1015, *citing*, *Leblanc*, 211 F.3d at 303.

### Intentional Infliction of Emotional Distress

Plaintiff also asserted a claim for intentional infliction of emotional distress under Louisiana Civil Code Article 2315.  In order to recover for intentional infliction of emotional distress, a plaintiff has the burden of proving: (1) that the conduct of the defendants was extreme and outrageous; (2) that the emotional distress suffered by him was severe; and (3) that the defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct.  *White v. Monsanto Co.*, 585 So.2d 1205,

14

1209-10 (La. 1991); *Moresi v. State, Department of Wildlife and Fisheries*, 567 So.2d 1081, 1095 (La. 1990); *Deus v. Allstate Insurance Co.*, 15 F.3d 506, 514 (5th Cir. 1994).   The conduct complained of must be so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is regarded as utterly intolerable in a civilized community.   *Id.* Liability arises only where the mental suffering or anguish is extreme, and the distress suffered must be such that no reasonable person could be expected to endure it.   *White*, 585 So.2d at 1210.

## <u>Analysis</u>

A review of the record shows that the moving defendants have failed to establish that no genuine issue of material fact exists with respect to whether they can be held liable under § 1983 and state law on most of the plaintiff's claims.[39]

### False Arrest Claim

Defendants argued that defendant Sutton is entitled to qualified immunity because he had probable cause to arrest the plaintiff for under LSA-R.S. 14:63.3(A) which states:

> No person shall without authority go into or upon or remain in or upon or attempt to go into or upon or remain in or upon any structure, watercraft, or any other movable, or immovable property, which belongs to another, including public buildings and structures, ferries, and

---

[39] This report does not address every disputed factual issue presented by the summary judgment evidence.   It focuses on those factual disputes which are central to the plaintiff's claims.

bridges, or any part, portion, or area thereof, after having been forbidden to do so, either orally or in writing, including by means of any sign hereinafter described, by any owner, lessee, or custodian of the property or by any other authorized person...

A disputed issue of material fact exists as to whether Sutton was authorized to order customers to leave the Lowe's store premises. Sutton testified that he was initially instructed in 1997 by two Lowe's loss prevention managers that dogs causing a disturbance were not allowed in the store.[40] Defendants also asserted that the official store policy is displayed in signs on the doors, and states that only service animals were welcome.[41] Defendants argued that this policy implies that no other dogs are allowed. Defendants also noted that other Lowe's employees recalled incidents where they have asked people with dogs to leave the store.

Even assuming that Lowe's had a policy concerning the presence of dogs in the store, it is unclear whether this policy would have required the plaintiff's removal from the store. Sutton testified that each manager had a different interpretation of the Lowe's dog policy and that he did not receive any specific instruction regarding the dog policy at the specific Lowe's store where the

---

[40] Defendants exhibit G, Sutton deposition, p. 70-72.

[41] Defendants exhibit D, Feather deposition, p. 62.

16

incident occurred.[42]  At the time Sutton approached the plaintiff, the plaintiff was being assisted by Lowe's employee Frank Rizzutto. Rizzutto did not ask the plaintiff to leave or tell him that dogs were not allowed in the store.[43]  Plaintiff also testified that in the six months prior to the incident, he brought his dog into the store numerous times.[44]  Lowe's loss prevention manager Randall Feather testified that it was the store's unwritten policy that if a person with a dog refused to leave the store, the person would still be left alone.[45]  Rizzutto also testified that he would allow people to keep their dog in store if the dog was in the buggy.[46] Because the evidence fails to establish that there was clearly defined and consistently implemented protocol concerning dogs in the Lowe's store, the court cannot find that there is no genuine dispute on this issue.

Defendants have also failed to establish whether Sutton was a person authorized to order a customer with a dog to leave or to prohibit the customer from coming into the store.  John Childress, a loss prevention manager for Lowe's at the time of the incident, stated in his affidavit that Sutton, as a contract private security

---

[42] Defendants exhibit G, Sutton deposition p. 71-72.

[43] Defendants exhibit C, Rizzutto deposition, p. 13.

[44] Plaintiff exhibit B, Skavron deposition, p. 169.

[45] Plaintiff exhibit C, Feather deposition, pp. 142-43.

[46] Defendants exhibit C, Rizzutto deposition, pp. 13-14.

guard, was not authorized to arrest Lowe's customers or persons on the property unless specifically requested to do so by the appropriate Lowe's representative, which was the loss prevention or store manager.[47]   Certain provisions found in Lowe's Loss Prevention, Safety, and Haz-Mat Department's Contract Parking Lot Security Outline limited Sutton's authority to act without confirmation from store personnel.[48]  A reasonable jury could find from Childress' testimony and the language in the Outline that Sutton clearly exceeded his authority.

Because it is uncertain whether probable cause to arrest the plaintiff existed, the court must consider whether a reasonably competent officer would not have known his actions violated then-existing clearly established law.  Defendants have failed to show that a reasonably competent officer (Sutton) would not have known there was no probable cause to arrest the plaintiff for remaining on the Lowe's premises when the officer himself (Stutton) did not have the authority to order the plaintiff to leave.[49]  Or to state it another way: Sutton could not reasonably and objectively believe he had probable cause to arrest the plaintiff based only on the

---

[47] Plaintiff exhibit F, Childress affidavit, ¶ 7.

[48] Plaintiff exhibit E.  The specific provisions are found on page 2, but they are not included in this report because the exhibit is under seal.

[49] No one else had "forbidden" the plaintiff from remaining in the store.

plaintiff's failure to obey Sutton's unauthorized order to leave.

Because there is a genuinely disputed issue as to the scope of Sutton's authority, whether he had probable cause to arrest the plaintiff cannot be resolved based on the summary judgment evidence.

Moreover, to be in violation of LSA-R.S. 14:63.3, the plaintiff must be given a reasonable time to actually accomplish his departure.[50]  The video submitted by the defendants shows that approximately 30 seconds elapsed from the time Sutton confronted the plaintiff to the time the plaintiff began to walk away. Because the video does not have sound, the plaintiff's intentions cannot be determined, i.e. whether he was leaving.  Even if Sutton had the authority to order the plaintiff to leave, viewing the evidence in the light most favorable of the plaintiff, a question of fact still remains as to whether Sutton had probable cause to arrest the plaintiff under LSA-R.S. 14:63.3.

Again, issues of material fact concerning Lowe's dog policy, the scope of Sutton's authority and his role as a private security officer, and the exact events leading up to the arrest, make summary judgment inappropriate.

**Excessive Force Claim**

Defendants argued that the video surveillance footage of the

---

[50] *Mesa*, 543 F.3d at 270.

19

incident shows that the force used by Sutton was reasonable.
Defendants claimed the video shows that Sutton only employed force
as a result of the plaintiff's resistance.  Defendants argued that
once the plaintiff submitted, Sutton ceased his attempts to place
handcuffs on both wrists and guided the plaintiff away from the
scene.

        The video shows that before the seizure occurred, the
plaintiff and Sutton had a conversation and then the plaintiff
attempted to walk away.  Plaintiff testified that after Sutton told
him to leave, he asked if he could complete his sale and then he
asked to see a store manager.[51]   Sutton testified that when asked
to leave the store, the plaintiff repeatedly stated that he was not
going anywhere.[52]   The video provided by the defendants does not
have sound.  Because the audio from the conversation between
defendant Sutton and the plaintiff was not captured, there is a
material issue of fact regarding whether the plaintiff began to
walk away from Sutton in an attempt to resist arrest or comply with
Sutton's orders to leave the store.

        The video also does not clearly show the specific forced used
while defendant Sutton attempted to seize the plaintiff, i.e., the
amount of pressure applied.  Plaintiff asserted that at one point
during the incident Sutton deliberately grabbed his wrists and

---

[51] Defendants exhibit B, Skavron deposition, p. 192.

[52] Defendants exhibit G, Sutton deposition, pp. 106-07.

clenched the handcuffs even tighter.  Plaintiff also testified that while he was being handcuffed by Sutton, Sutton said that he was going to show him (the plaintiff) that he (Sutton) did not need a store manager.

Plaintiff provided testimony from his orthopedic surgeon, who examined the plaintiff after the incident, that the plaintiff sustained bloody swelling, bruising, numbness, discoloration, and a possible acute sprain and contusion.[53]

### First Amendment Claim

Defendants argued against the plaintiff's First Amendment claim insofar as it involves a violation of the plaintiff's right to associate.  Plaintiff argued that his First Amendment claim is based on his right to freedom of speech.  Plaintiff argued that his First Amendment right to freedom of speech was violated when Sutton retaliated against him by issuing an additional citation for public intimidation because he verbally contested the arrest.

Defendants did not address a First Amendment claim based on freedom of speech, thus summary judgment on this claim is improper.

### Punitive Damages Claim

Plaintiff argued that certain acts committed by defendant Sutton during the arrest demonstrate his ill will and reckless indifference to the plaintiff's protected rights.  Specifically,

---

[53] Plaintiff exhibit P, Dr. Broussard deposition, p. 18-19.

the plaintiff referred to how Sutton tightened the handcuffs when he knew the plaintiff was in pain, and told him, "I'll show you that I don't need a manager" and "you should have worried about [your grandson] when I told you to leave the store."[54]   Defendants have cited no case law which establishes that an award of punitive damages cannot be supported based on such evidence.   Because the plaintiff has provided evidence from which a jury could make a finding of ill will or reckless indifference on the part of Sutton, summary judgment should be denied.

### Failure to Train and/or Supervise Claim

In support of his § 1983 claim bases on the sheriff's failure to train and/or supervise Sutton, the plaintiff recounted the details of his arrest.   However, the plaintiff failed to provide any evidence of a pattern of similar violations by Sutton, or any other deputy sheriff, which would demonstrate deliberate indifference in the sheriff's training on the use of force and handcuffs.   Plaintiff's reliance on the facts of his arrest is not sufficient to support a § 1983 claim for failure to train under the established law and the undisputed facts in this case.

Plaintiff also asserted that the sheriff's office neglected to maintain records of complaints against Sutton.   Plaintiff relied on

---

[54] Plaintiff did not cite where this testimony is located in his exhibits.   Similar testimony is found in defendants exhibit B, Skavron deposition, p. 212.

22

testimony from the division commander over Internal Affairs, Lt. Daniel McAllister, who could not recall various details regarding the investigation of the complaint against Sutton at issue in this case or a prior, unrelated complaint against Sutton.

There is no indication that McAllister was testifying as a Rule 30(b)(6), Fed.R.Civ.P., representative for the sheriff's office, i.e, the sheriff sued in his official capacity. Therefore, McAllister was not required to review official records relevant to this action for his deposition. His failure to recall complaints and investigations that took place years earlier does not establish a systemic problem with the sheriff's supervision over his personnel that is connected to a violation of the plaintiff's rights.

The two other complaints Sutton testified about did not involve an arrest or the use of force.[55]  No reasonable person could rely on them to find any relevant failure to train or supervise.

Plaintiff failed to provide any evidence which shows that the sheriff acted or failed to act with deliberate indifference to the plaintiff's constitutionally protected rights.  Accordingly, the summary judgment with respect to plaintiff's § 1983 claims against Gautreaux based on supervisory liability should be granted.

---

[55] Plaintiff exhibit H, Sutton deposition, pp. 34-38.

23

**Intentional Infliction of Emotional Distress Claim**

Summary judgment is also appropriate as to the plaintiff's claim for intentional infliction of emotional distress.  Although the plaintiff provided a substantial amount of information to demonstrate that Sutton's conduct was extreme and outrageous, the plaintiff failed to provide any facts demonstrating that his emotional distress was severe.  Without evidence detailing the actual distress suffered, e.g., the results of psychological examinations and treatment, or physical symptoms associated with severe emotional trauma such as inability to sleep, anxiety and weight loss, the plaintiff's intentional infliction of emotional distress claim cannot succeed.

## Conclusion

Considering all the undisputed summary judgment evidence, and all the disputed evidence in the light most favorable to the plaintiff, summary judgment is warranted only as to the plaintiff's § 1983 supervisory liability claim and his state law intentional infliction of emotional distress claim.

## Recommendation

It is the recommendation of the magistrate judge that the Motion for Summary Judgment filed by defendants East Baton Rouge Parish Sheriff Sid Gautreaux and Sgt. Harold E. Sutton be granted in part, and denied in part.  Summary judgment should be granted to

defendant East Baton Rouge Parish Sheriff Sid Gautreaux on the plaintiff's § 1983 claims based on supervisory liability, and to both defendants on the plaintiff's state law claim for intentional infliction of emotional distress.  Summary judgment on all other claims should be denied.

    Baton Rouge, Louisiana, March 6, 2009.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE